UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

SERKAN USLU,

      Petitioner,

v.

No. 6:26-CV-00101-H

WARDEN, DIAMONDBACK
CORRECTIONAL FACILITY,[1]

      Respondent.

## ORDER

Petitioner Serkan Uslu is a native and citizen of Turkey. Proceeding pro se, he filed a 28 U.S.C. § 2241 habeas petition to challenge the legality his post-removal-order detention since June 13, 2025. Dkt. No. 1. He claims that his prolonged detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and his constitutional rights to due process. Briefing on Uslu's petition is complete. As explained below, the Court grants the petition.

## 1.  Background

The following relevant facts are undisputed and gleaned from the April 15, 2026 declaration of Tanner Neville, a Deportation Officer for Enforcement Removal Operations (ERO) in the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement Division (ICE), and the other records attached to the government's response. *See* Dkt. No. 9. On January 6, 2025, United States Border Patrol agents encountered Uslu near Dulzura, California; determined that he was present in the United States without authorization;

---

[1] The Clerk is directed to change the caption to substitute the Warden of the Diamondback Correctional Facility as the proper respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) (explaining that there is generally only one proper respondent in a habeas case, and that is the person who holds the petitioner in custody). All other named respondents will be terminated from this civil action. Uslu was detained in the Eden Detention Center when he filed the petition, but he has since been transferred to the Diamondback Correctional Facility in Oklahoma.

and served him with a notice and order of expedited removal. *Id.* at 47. After Uslu made a claim of fear of return to Turkey, on February 6, 2025, the U.S. Citizenship and Immigration Service (USCIS) removed Uslu from the expedited removal process and issued a notice to appear, initiating removal proceedings against Uslu on the ground that he is an alien present in the United States who has not been admitted or paroled. *Id.* at 5–7, 47.

On June 13, 2025, an immigration judge entered an order denying Uslu's request for asylum, granting his request to withhold his removal to Turkey, and ordering that Uslu be removed to any other county that will accept him. *Id.* at 21–24, 48. Uslu waived his right to appeal the order, rendering it a final order of removal for purposes of 8 U.S.C. § 1231. *Id.* at 24.

On July 7, 2025, ERO officers met with Uslu to discuss his options and, per his request, sent three "Request[s] for Acceptance of Alien" to the Consulates General of Canada and Norway and the Home Office of Australia. *Id.* at 48. Soon thereafter, Uslu was denied permission to enter all three countries. *Id.* at 31, 33, 35, 48.

On September 5, 2025 and January 23, 2026, ERO officials completed a "Post Order Custody Review" and discussed with Uslu the efforts they were making to find a suitable country for him and their decision to continue his detention, citing their continued efforts to seek a third-country alternative for his removal. *Id.* at 37–39, 41–42, 49.

Uslu filed his petition on March 5, 2026. Dkt. No. 1. He claims that his prolonged detention pursuant to Section 1231 violates *Zadvydas* and his constitutional rights to due process. The government filed a response and relevant records, arguing that the Court should deny Uslu's petition because he is likely to be removed from the United States in the reasonably foreseeable future, citing its previous efforts to effectuate Uslu's removal to Australia, Canada, and Norway and Neville's declaration. Dkt. Nos. 8, 9. Although Neville acknowledges that that the government's efforts to remove Uslu to a third country present a challenge given his

– 2 –

language and cultural limitations, he nevertheless states that Uslu's removal is likely to occur in the reasonably foreseeable future because the government has a valid Turkish passport for him, which assists the government in obtaining necessary travel documents, and that, since 2024, the government has successfully removed 1,766 Turkish nationals to third countries. Dkt. No. 9 at 49–51. Neville states that the government is diligently working to effectuate Uslu's removal. *Id.* at 51.

Uslu filed a reply and attached records, insisting that his removal is not likely to occur in the reasonably foreseeable future. Dkt. No. 13. On June 4, 2026, the Court directed the government to file a supplemental response, explaining what additional active efforts, if any, are underway to remove Uslu from the United States. Dkt. No. 16. In its supplemental response, the government concedes that it "cannot say that a likelihood of [Uslu]'s removal in the reasonably foreseeable future in fact exists." Dkt. No. 17.

## 2.   Legal Standards

### A.   Writ of Habeas Corpus

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2)). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas*, 533 U.S. at 687–88. Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." *See* 28 U.S.C. § 2243.

### B.      Immigration Detention Under 8 U.S.C. § 1231

Ordinarily, the government must remove an alien within 90 days of a final order of removal.  8 U.S.C. § 1231(a)(1)(A).  During this "removal period," the government "shall detain" the alien.  *Id.* at § 1231(a)(2)(A).  If the alien does not leave the country or is not removed within the removal period, the alien is "subject to supervision."  *Id.* at § 1231(a)(3).  But under Section 1231(a)(6), the government "may" continue to detain certain aliens beyond the removal period if they are (1) inadmissible, (2) removable because of certain violations, or (3) are a risk to the community or unlikely to comply with the removal order.  *Id.* at § 1231(a)(6).

By its terms, Section 1231(a)(6) does not impose any time limit on an alien's post-removal-period detention.  Faced with "constitutional concerns" about indefinite detention, the Supreme Court in *Zadvydas* addressed how long the government may detain an alien under Section 1231(a)(6) while their removal is pending.  533 U.S. at 682.  The petitioners in *Zadvydas*—two resident aliens with criminal histories—were detained under Section 1231 after receiving final removal orders.  *Id.* at 684–86.  In both instances, the government continued to detain the petitioners past the 90-day removal period.  *Id.*  The petitioners each filed a habeas petition claiming that their continued detention violated due process.  *Id.*

The Supreme Court first noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  *Id.* at 690.  To avoid these concerns, the *Zadvydas* Court construed Section 1231(a)(6) to permit detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States."  *Id.* at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id.* at 699, and the alien is "eligible for conditional release" on an order of supervision.  *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

Courts measure reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. They must also consider the Executive Branch's immigration expertise, "the serious administrative needs and concerns inherent in the necessarily extensive" efforts to enforce Section 1231, and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized in *Zadvydas* a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once the alien has satisfied his burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Accordingly, while not every non-removed alien must be released after six months, the parties' relative burdens may change as the duration of an alien's post-removal-period detention stretches on. *See id.*

### 3.    Analysis

As of today, Uslu has been detained for 396 days since his removal order became administratively final—far longer than *Zadvydas*' presumptively reasonable six-month period. *See* 533 U.S. at 701. The first question, then, is whether Uslu has met his initial burden: Is there "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future?" *Id.* As explained below, the answer is "yes."

### A.    Uslu has shown that there is no significant likelihood of removal in the reasonably foreseeable future.

To carry his initial burden, Uslu "must present something beyond speculation and conjecture." *Idowu v. Ridge*, No. 3:03-CV-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (Ramirez, J.).  More specifically, Uslu "must demonstrate that 'the circumstances of his status' or the existence of 'particular individual barriers to his repatriation' to [a third country] are such that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (quotation omitted).

It is undisputed that Uslu's removal order became administratively final on June 13, 2025, and his immigration detention began approximately five months beforehand.  In his verified petition, Uslu contends that the government is barred from removing him to Turkey, no third country has agreed to accept him, and the government has not otherwise obtained any travel documents for his removal to any third country.  Dkt. No. 1.  He also contends that the government has not shown that he poses a flight risk or danger to the community, or at any time failed to comply with an order of supervision.  *Id.* at 2.  In his May 22, 2026 reply to the government's response, Uslu maintains that the government has not submitted any additional requests for third countries to accept him since July 2025—when Australia, Canada, and Norway denied the government's requests to accept him into their respective countries.  Dkt. No. 13 at 3.  Uslu attaches the countries' denials to his reply.  *Id.* at 6–9.

While the Court recognizes the importance of deferring to the Executive Branch on immigration matters, deference has its limits.  *See Surovtsev v. Noem*, No. 1:25-CV-160, 2025 WL 3264479, at *7 (N.D. Tex. Oct. 31, 2025) (Hendrix, J.) ("[T]he government cannot succeed merely by showing it has made 'good faith efforts' for which the outcome is not 'impossible.'" (quoting *Zadvydas*, 533 U.S. at 702)).  The Supreme Court made clear that, no matter the deference typically accorded the government on sensitive issues of foreign policy, courts cannot

"abdicat[e] their legal responsibility to review the lawfulness of an alien's continued detention." *Zadvydas*, 533 U.S. at 700.

After reviewing the record and appliable law, the Court finds that Uslu has met his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future.

### B.      The government fails to meet its burden under *Zadvydas*.

That leaves the final question:  Has the government offered evidence that is sufficient to rebut Uslu's showing?  By the government's own admission, it has not.

In its June 18, 2026, one-page supplemental response, the government states in a conclusory manner that its efforts to facilitate Uslu's removal to a third country "remain ongoing in that the government is continually attempting to negotiate third country removal agreements or arrangements with other countries, and is also always simultaneously assessing whether particular individuals (like [Uslu]) can be slotted into such agreements or arrangements (as well as existing ones)."  Dkt. No. 17.  But the government does not plead any specific facts or attach any records to show that, since July 2025, it has taken any specific action to effectuate Uslu's removal to a third country.  In fact, with respect to Uslu, the government concedes that, it "cannot point to any additional facts that would be more specific to [Uslu]'s attempted removal" and "cannot say that a likelihood of [Uslu]'s removal in the reasonably foreseeable future in fact exists."  *Id.*  Moreover, the government does not argue or show that Uslu's prolonged post-removal detention is otherwise lawful for any reason under Section 1231.

 Put simply, because the government has "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months," *Clark*, 543 U.S. at

386, the Court concludes that Uslu's continued detention pursuant to Section 1231(a)(6) is unlawful under *Zadvydas*.[2]  Therefore, Uslu must be released.

### 4.    Conclusion

In sum, Uslu has shown "good reason to believe" that there is no significant likelihood that he will be removed from the United States in the reasonably foreseeable future.  *Zadvydas*, 533 U.S. at 701.  And the government failed to rebut that showing.  Therefore, under *Zadvydas*, Uslu is entitled to release on supervision.  His petition for a writ of habeas corpus is therefore granted.

Respondent is ordered to release Uslu from the Diamondback Correctional Facility on an Order of Supervision within 24 hours of this Order.  *See* 8 U.S.C. § 1231(a)(3).  Upon his release, Respondent is further ordered to file a written notice on the docket notifying the parties and the Court.

So ordered.

Dated July 14, 2026.

James Wesley Hendrix
United States District Judge

---

[2] Because the Court finds that Uslu is entitled to relief on the ground that his continued detention under Section 1231(a)(6) violates *Zadvydas*, it need not address his separate, related argument that his detention violates his constitutional rights.